**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN ANTHONY MATTHEWS | : |
| v. | :     Civil Action No. CCB-08-1389 |
| ROBERT KOPPEL, et al. | : |

..o0o..

## MEMORANDUM

Pending is a 28 U.S.C. § 2254 Motion for Writ of Habeas Corpus filed by counsel on behalf of John Anthony Matthews, Jr. ("Matthews"), challenging his convictions in the Circuit Court for Prince George's County, Maryland for first-degree murder and related offenses. Counsel for respondents Robert Koppel,[1] Warden of the Maryland House of Correction-Annex, and Douglas F. Gansler, Attorney General of the State of Maryland, has filed a response to which Matthews has replied. The case is fully briefed. Upon careful review of the pleadings, transcripts, and applicable law, the court determines an evidentiary hearing is unwarranted. The petition will be denied.

## BACKGROUND

Matthews was convicted by a jury of first-degree murder, felony murder, second-degree murder, first-degree burglary, robbery with a deadly weapon, robbery, and conspiracy to commit burglary. On December 19, 2003, he was sentenced to life imprisonment for first-degree murder. The remaining convictions were merged at sentencing.

---

[1] Matthews is currently confined at the North Branch Correctional Institution where Bobby Shearin is warden. *See* Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254; Fed. R. Civ. P. 25(d).

The Court of Special Appeals summarized the facts as follows:

On October 14, 2002, Reginald Spencer was shot and killed in his home. At trial, the State's theory was that appellant shot Mr. Spencer during the course of a burglary perpetrated by appellant and Rafael Fowler. Krystal Alexander assisted the two men.

Maurice Ford, a neighbor of Mr. Spencer's testified on behalf of the State. The witness testified that, on the afternoon of October 14, 2002, a red Thunderbird pulled up to an area near Mr. Spencer's home. A "black man" and an "Asian guy" got out of the vehicle, and a woman remained in the vehicle. The two men, one carrying a bag and the other a wooden bat, ran, and then walked, toward Mr. Spencer's house. The witness later told a detective about what he had observed.

Maurice Ford's brother, Kenneth Ford, also testified. He stated that he told a detective that he knew an "Asian guy" named John who drove a red Thunderbird. He also stated he had seen the vehicle in the neighborhood on one or two occasions prior to October 14, 2002.

Detective Robert Frankenfield testified that he was the lead detective assigned to investigate the crimes in question. Based on the information obtained from the Ford brothers, Detective Frankenfield went to appellant's home on November 20, 2002, to interview appellant. Subsequently, appellant accompanied Detective Frankenfield to the police station. During the course of the interview, and after appellant stated that he knew Mr. Spencer and had gone there the day of the crimes, Detective Frankenfield advised appellant of his *Miranda* rights. Thereafter, appellant advised the police that he had gone to Mr. Spencer's house with James Bishop and Krystal Alexander, and that it was Mr. Bishop who shot Mr. Spencer and then forced appellant to take items from the house.

Detective Frankenfield located Krystal Alexander and interviewed her. She told the detective that she was involved in the crime with appellant, but the third person was Rafael Fowler, not James Bishop. Appellant, who was still at the police station, when confronted with this information by the detective, admitted that he and Mr. Fowler went into Mr. Spencer's home and he-appellant-shot Mr. Spencer.

Ms. Alexander, who had also been charged with the crimes, testified that she went with appellant and Mr. Fowler to Mr. Spencer's home. When they returned to the vehicle, appellant stated that he had shot Mr. Spencer. Prior to her testimony, Ms. Alexander had entered into a plea agreement. Pursuant to that agreement, she agreed to plead guilty to accessory before the fact to first degree

burglary, and the State agreed to enter a nolle prosequi on the remaining charges against her.

Mr. Fowler, under indictment for the same crimes, testified that he and appellant committed the burglary and that appellant shot Mr. Spencer.

(Answer to Pet. Ex. 10 at 1-3 (footnote omitted).)

### PROCEDURAL HISTORY

Matthews raised three claims of error on appeal:

1. Did the circuit court err in not permitting defense counsel to ask certain questions on cross-examination of an investigating police officer?

2. Did the circuit court err in permitting improper closing argument by the prosecutor and in denying appellant's motion for mistrial?

3. Did the circuit court err in permitting the prosecutor to cross-examine appellant about the underlying crimes during a hearing on appellant's motion to suppress his confession?

(*Id.* at 1.)

The Court of Special Appeals of Maryland affirmed Matthews's convictions on appeal, ruling: 1) the trial court did not abuse its discretion by limiting cross-examination of Detective Frankenfield; 2) the prosecutor did not make an improper closing argument; and 3) Matthews failed to establish error or prejudice from the prosecutor's cross-examination at the suppression hearing. *See Matthews v. State*, No. 2367 (Md. Ct. Spec. App. December 6, 2004).

Matthews's petition for writ of certiorari raised two issues:

1. Did the circuit court err in not permitting defense counsel to ask certain questions on cross-examination of an investigating police officer?

2. Did the circuit court err in permitting the prosecutor to cross-examine appellant about the underlying crimes during a hearing on appellant's motion to suppress his confession?

(*See* Answer to Pet. Ex. 11 at 2.)  The Court of Appeals of Maryland denied Matthews's petition for writ of certiorari on March 14, 2005.

On June 7, 2005, Matthews filed a petition for post-conviction relief presenting claims of ineffective assistance of trial counsel for: 1) failing to raise a violation of Matthew's right to prompt presentment in support of his motion to suppress the confession; 2) failing to litigate the motion to suppress properly; 3) failing to redact prejudicial parts of letters admitted into evidence; 4) improperly shifting the burden of persuasion to Matthews during closing argument; 5) failing to pursue an *Alford* [2] plea; and 6) cumulative effect of the errors.  The Circuit Court for Prince George's County conducted a hearing on January 24, 2006, and denied relief on March 10, 2006.

Matthews filed an application for leave to appeal the post-conviction court's determination.  The application, as amended, claimed trial counsel provided ineffective assistance by: 1) failing to raise a violation of Matthew's right to prompt presentment in support of his motion to suppress the confession; 2) failing to redact prejudicial parts of letters admitted into evidence, and 3) failing to pursue an *Alford* plea.  (*See id.* at Exs. 17 and 18.)  On May 29, 2007, the Court of Special Appeals summarily denied the application for leave to appeal.

## PETITIONER'S CLAIMS

In his federal habeas petition, Matthews claims ineffective assistance of trial counsel for failing to: 1) raise a violation of the right to prompt presentment in support of the motion to suppress evidence; 2) redact prejudicial parts of a letter admitted into evidence, and 3) failing to

---

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

pursue an *Alford* agreement.  Additionally, Matthews claims trial court error for: 4) refusing to permit trial counsel to cross-examine Detective Frankenfield about hiding exculpatory evidence as well as his extraction of a false confession in another case; and 5) permitting the prosecutor to cross-examine Matthews about the underlying crimes during the suppression hearing.

## STANDARD OF REVIEW

This petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended, which provides a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7. (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005) (explaining that habeas court's standard for evaluating state court rulings is highly deferential). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008).

A state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "[A] federal

5

habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Furthermore, when a state court has made a finding of fact, it is presumed correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Ineffective assistance claims are reviewed under a two-part test established in *Strickland v. Washington,* 466 U.S. 668 (1984). *See also Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (explaining the interplay between *Strickland* and 28 U.S.C. § 2254(d)). In order to establish infringement of a criminal defendant's Sixth Amendment right to effective assistance of counsel, it must be shown that 1) counsel's performance was deficient, and 2) the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. Representation is deficient if it falls below "an objective standard of reasonableness." *Id*. at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (internal quotation omitted). The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. To prevail, a petitioner must overcome the presumption that the challenged action might be considered "sound trial strategy." *Id*. at 689.

Prejudice requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, the result of which is reliable, and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 687, 694. "The benchmark for judging any claim of ineffectiveness must

be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even if the attorney had been deficient. *See id.* at 697.

In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly. Rather, a petitioner must show that the state court applied *Strickland* to the facts in an objectively unreasonable matter. *See Bell*, 535 U.S. at 698-99.

## PROCEDURAL DEFAULT

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. 28 U.S.C. § 2254(b), (c); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999). In Maryland, this may be accomplished by raising certain claims on direct appeal and with other claims by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed the petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

When a petitioner fails to present a claim to the highest state court with jurisdiction, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477

U. S. 478, 497 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481-82 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

The procedural default doctrine bars consideration of a claim in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. *See Murray*, 477 U.S. at 495-96; *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S. 298, 314-15 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 321. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 316. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496.

## ANALYSIS

### A. Ineffective Assistance of Counsel Claims

#### 1. Prompt Presentment

Matthews complains trial counsel was deficient for failing to argue a prompt presentment violation to suppress his confession. The post-conviction court rejected this claim:

> Petitioner claims that any reasonably competent attorney would have argued that the approximately twelve-hour delay in presentment violated Petitioner's right to prompt presentment. Petitioner claims that the presentment argument has merit because *Facon v. State*, 375 Md. 435, 825 A. 2d 1096 (2003), *Hiligh v. State*, 375 Md. 456, 825 A. 2d 1108 (2003), and *Williams v. State*, 375 Md. 404, 825 A.2d 1078 (2003), held that deliberate, unnecessary presentment

delays are to be given very heavy weight in voluntariness determinations.

> The State claims that the presentment argument does not have merit because *Williams* also states that a delay that would be considered necessary is one in which reasonable administrative procedures are taken to determine whether a charging document should be issued (1) to verify the commission of a crime and (2) to obtain information likely to aid and to avert harm to people and loss of property. The State believes that the delay in this case falls under this necessary category as described in *Williams*.
>
> The State raised this issue at trial (as part of her response to defense counsel's motion to suppress statements that Petitioner gave to the police), noting first that she was aware that defense counsel was not going to raise the issue. Defense counsel did not reply to her response, the Court denied defense counsel's motion [to suppress], and this exchange followed:
>
> | | |
> |---|---|
> | MS. SOLTYS (state): | Your Honor, is the court also finding there was no deliberate or unnecessary delay in presenting him? |
> | THE COURT: | I think it's only 12 hours. |
> | MR. MCKENNA: (defense) | It was 12 hours. I don't think the Court has to find that in particular. |
> | THE COURT: | I think you're right. |

(Answer to Pet. Ex. 16, pp. 6-7; *see also* Answer to Pet. Ex. 4, p. 91.) [3]

The post-conviction court further rejected claimed ineffective assistance for failure to raise presentment in jury instructions and at closing argument, as follows:

> The fact that trial defense counsel did not elevate the decision he made, not to further raise the presentment issue after the Judge's ruling, to the level of a conscious and spoken tactic, does not show that trial defense counsel was not functioning in a reasonable manner. In fact, this Court finds his decision to be within the range of actions permissible under *Strickland*.
>
> Finally, even assuming *arguendo* that Petitioner has shown that trial

---

[3] The defense raised two grounds for suppression: 1) lack of voluntariness; and 2) prejudice under Maryland Rule 4-403 because the videotape was of poor quality. (Answer to Pet. Ex. 4, pp. 79-83.)

> defense counsel's performance in this instance was deficient, this Court finds that Petitioner has not proven that the outcome of the trial would have been different but for trial defense counsel's failure to further raise the timeliness of presentment issue at the Motions Hearing, in requesting Jury Instructions, and in Closing Argument. *Facon, Hiligh*, and *Williams* do not mandate a finding that the approximately twelve-hour delay in this case violated Petitioner's right to prompt presentment. Therefore, Petitioner was not prejudiced.

(Answer to Pet. Ex. 16, pp. 9.)

In order to be entitled to federal habeas corpus relief, a petitioner must demonstrate that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also, Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Violations of state law which do not infringe on specific federal constitutional protections are not cognizable under § 2254. *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Weeks v. Angelone,* 176 F.3d 249, 262 (4th Cir. 1999) ("when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review"). The prompt presentment rule is a matter of state court criminal procedure. *See Smith v. Warden, Maryland Penitentiary*, 477 F. Supp. 500, 501 (D. Md. 1979) (state exclusionary rule for prompt presentment does not implicate a constitutional right); *see also United States v. Johnson*, 352 F. Supp. 2d 596, 597 (D. Md. 2005) (discussing judicial discretion under federal presentment statute at 18 U.S.C. § 3501(c)). Matthews's state post-conviction petition raised this issue solely on the grounds of Maryland Rule 4-212 (e).[4] Thus, to the extent

---

[4] Maryland Rule 4-212(e) provides:

> Unless the defendant is in custody, a warrant shall be executed by the arrest of the defendant. Unless the warrant and charging document are served at the time of the arrest, the officer shall inform the defendant of the nature of the

this claim is based solely upon an interpretation of state law, it is not cognizable in federal habeas corpus. *See Estelle*, 502 U.S. at 67-68; *Weeks*, 176 F.3d at 262.

Further, the state post-conviction court's findings are supported by the record. Maryland Rule 4-212 (f) states, "When a defendant is arrested without a warrant, the defendant shall be taken before a judicial officer of the District Court without unnecessary delay and in no event later than 24 hours after arrest." *See also* Md. Code Ann., Cts. & Jud. Proc. § 10-912. " ...[A]ny deliberate and unnecessary delay in presenting an accused before a District Court Commissioner, in violation of Rule 4-212(e) or (f) must be given very heavy weight in determining whether a resulting confession is voluntary, because that violation creates its own aura of suspicion." *Williams v. State*, 375 Md. 404, 435 (2003). Matthews voluntarily went to the police station to speak with Detective Frankenfield.   At that time, Matthews was neither under arrest nor identified as a suspect in the murder. (Answer to Pet. Ex. 3 pp. 9-10, 28-29, 45-46, 50-52, 85-

---

offense charged and of the fact that a warrant has been issued.  A copy of the warrant and charging document shall be served on the defendant promptly after the arrest.  The defendant shall be taken before a judicial officer of the District Court without unnecessary delay and in no event later than 24 hours after arrest or, if the warrant so specifies, before a judicial officer of the circuit court without unnecessary delay and in no event later than the next session of court after the date of arrest. The court shall process the defendant pursuant to Rule 4-216 and may make provision for the appearance or waiver of counsel pursuant to Rule 4-215.

Md. Code Ann., Cts & Jud. Pro. Art.  10-912 provides:

(a) A confession may not be excluded from evidence solely because the defendant was not taken before a judicial officer after arrest within any time period specified by Title 4 of the Maryland Rules.

(b) Failure to strictly comply with the provisions of Title 4 of the Maryland Rules pertaining to taking a defendant before a judicial officer after arrest is only one factor, among others, to be considered by the court in deciding the voluntariness and admissibility of a confession.

86.) Matthews acknowledged that he was at the scene of the murder when it was committed, and identified James Bishop as the killer. *Id*. at 11-12, 17-28, 35-37, 88. The police continued their investigation with this information. *Id*. at 30-34. Krystal Alexander told police later that day that she went with Matthews and Rafael Fowler to Spencer's home, and identified Matthews as the shooter. *Id.* at 34-35. Frankenfeld asked Matthews about this information at approximately 6:00 p.m. *Id.* at 37. Matthews then gave a written confession. *Id.* at 38-39. Matthews was then taken "for processing." *Id.* at 44.

On these facts, the State post-conviction court determined there was no violation of the presentment rule, and counsel cannot be deemed ineffective for failing to raise a meritless issue. Counsel's representation was neither deficient nor prejudiced Matthews.[5] The state post-conviction court's application of *Strickland* to the facts is entitled to deference; it did not involve an unreasonable application of federal law or determination of the facts. There is no cause to award relief on this claim.

2.  Failure to Redact a Part of a Letter in Evidence

Matthews complains trial counsel was ineffective for failing to redact a letter in evidence (State's Exhibit 4) which could be construed as an attempt by counsel to suborn perjury. At trial, defense counsel objected to admission of the letter on the grounds that it could not be authenticated. The letter, written by Matthews to "Stacy and Tex," read: "I don't know if my lawyer talked to ya'll yet but I am in jail for 1st degree murder." The letter continued that

---

[5] As earlier noted, the prosecutor raised and the court rejected the prompt presentation claim at the suppression hearing. The court later instructed the jury to consider the voluntariness of Matthews's confession, *ie*. whether "the defendant was taken before a District Court Commissioner without unnecessary delay following arrest and, if not, whether that affected the voluntariness of the statement." (Answer to Pet. Ex. 6, p. 15.)

Matthews needed their help to establish an alibi and he wanted them to lie for him.  Later, the trial court admitted a second letter, (State's Exhibit 5) from Matthews asking a friend to lie for him.  The second letter mentioned that "my lawyer might be stoppin through here," and was redacted at trial counsel's request.  (Answer to Pet. Ex. 5, pp. 127-28.)

The State read Exhibit 4 to the jury at closing argument. Defense counsel moved for a mistrial, arguing the letter was prejudicial.  The trial court denied the motion and the following exchange ensued:

| | |
|---|---|
| MR. TRAINOR (defense): | Your Honor, can we ask the reporter to find in the section of the tape that deals with the redaction?  Because I'm certain that [the State's] wrong on that. |
| THE COURT: | I'll do that before we send it into the jury. |
| MR. TRAINOR: | And then I would like to revisit the argument whether [the State] improperly put matters, prejudicial matters before the jury. |
| THE COURT: | Okay. |

(Answer to Pet. Ex. 6, p. 61.)

*****************

| | |
|---|---|
| MR. MCKENNA (defense): | Actually one other thing having to do with that. Well- |
| MR. TRAINOR: | That's all we have on the motion for mistrial. |
| MR. MCKENNA: | Separate issue entirely.  I don't know whether you want to rule on that first.  We will at this point ask this line be redacted. |
| THE COURT: | I'll do it when we take a break.  We will redact that which we have to redact. |
| MS. SOLTYS: | I'm objecting.  I would like to be heard on |

13

|                | that.                                                                 |
|----------------|-----------------------------------------------------------------------|
| MR. TRAINOR:   | I don't know if the court has ruled on the motion for mistrial.       |
| THE COURT:     | I have not as of yet.                                                 |

(*Id.* at 103.)

After the close of evidence, trial counsel requested redaction of State's Exhibit 4. The court said it was too late to honor the request: There "[w]as no request at the very beginning to do it. It was only after the fact." (*Id.* at 107.) The court then denied the defense's second motion for mistrial.

Matthews' claim of ineffective assistance for failure to move to redact was rejected by the post-conviction court, which stated:

> The first question is whether the part requested to be taken out, " I don't know if my lawyer talked you all [sic] yet, but I'm in jail for first degree murder" damages trial defense counsel's credibility. This Court finds that it does not.
>
> Nothing in the express language of this sentence taken alone and certainly not in context says or even infers that trial defense counsel is dishonest or not credible. Simply talking to witnesses or about Petitioner intending for his lawyer to talk to witnesses, which is part of a lawyer's job in preparing any case, does not suggest that the lawyer will attempt to manipulate the witnesses' testimony or otherwise commit a dishonest act reflecting on the credibility of this particular lawyer or lawyers generally. This Court has no basis to presume that one or more members of the jury in this case hold to this cynical view of lawyers who talk to witnesses in cases they are handling.
>
> Finally, even assuming *arguendo* that Petitioner has shown that trial defense counsel's performance in this instance was deficient, this Court finds that Petitioner has not proven that the outcome of the trial would have been different but for trial defense counsel's failure to redact part of the letter at issue. Therefore, Petitioner
> was not prejudiced.

(Answer to Pet. Ex. 16, p. 13.)

"The federal habeas statute dictates a highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit of the doubt. The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F. 3d 295, 299 (4th Cir. 2006) (internal quotation marks and citation omitted). The state post-conviction court's findings are presumed correct and entitled to deference. Matthews fails to meet the burden of rebutting this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Matthews provides no evidence that but for the admission of the unredacted letter, the outcome of trial would be different. There was ample evidence at trial to incriminate him. Rejection of this claim does not amount to unreasonable application of *Strickland,* and federal habeas relief is denied.

### 3. Failure to Pursue an *Alford* Plea

Matthews next claims that trial counsel's failure to pursue an *Alford* plea constituted ineffective assistance. He claims that he would have pleaded guilty had he known he might enter an *Alford* plea without admitting guilt. At the post-conviction hearing, trial counsel testified that he did not recall whether he discussed an *Alford* plea with Matthews. (Answer to Pet. Ex. 15, p. 46.) He added "but I don't think Mr. Matthews, Jr. was going to take a plea no matter what." (*Id.*)

In rejecting this claim, the state post-conviction court determined:

> Preliminarily, this Court is well aware that there is no constitutional right to plead guilty under *Alford* or otherwise. *See Lee v. State*, 26 Md. App. 249, 373 A. 2d 331 (1977). Second, *Strickland* discourages bright-line rules because the claimed ineffective assistance of counsel must be considered in context with all of the surrounding circumstances.
>
> Furthermore, pursuing an *Alford* plea is not the same as entering an *Alford* plea. Petitioner had already turned down an earlier Plea Offer, which would have resulted in a sentence of Life with all but 30 years suspended. If trial counsel had pursued an *Alford* plea, that does not necessarily mean that the State would have tendered one or that Petitioner would have ultimately accepted it. Therefore, this Court finds that trial defense counsel's performance was not deficient when he did

15

> not further pursue an *Alford* plea.
>
> Finally, this Court does not reach the question of whether Petitioner was prejudiced because this Court has found that trial defense counsel's performance in this regard was not deficient.

(Answer to Pet. Ex. 16, p. 15.)

Counsel has a duty to advise a client of all plea offers. Failure to do so may constitute ineffective assistance. The court is unaware, and petitioner's counsel does not provide, case precedent holding that counsel must pursue an *Alford* plea. Further, it does not follow that the State would have offered an *Alford* plea or that Matthews would have agreed to such a plea. Although Matthews testified before the post-conviction court that he would have accepted a plea, his attorney gave contradictory testimony. (Answer to Pet. Ex. 15, pp. 46, 64-66, 79-82, 88.) "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence…." *Strickland*, 466 U.S. at 689. The state court's rejection of the claim withstands federal habeas review.

### B. Claims of Trial Court Error

#### 1. Cross-Examination of Detective Frankenfield

Matthews contends that his Sixth Amendment right to confront witnesses was violated when the trial court limited cross-examination of Detective Frankenfield. During cross-examination, defense counsel advised the trial court that he intended to challenge Frankenfield's credibility by questioning him about hiding exculpatory evidence in an unrelated homicide case involving Robert Angel Perez, Jr.[6] and a second unrelated case concerning a false confession by Keith Longton. After holding a hearing outside the presence of the jury on the question, the trial court concluded Frankenfield's conduct did not constitute "bad acts" and disallowed this line of

---

[6] *State v. Perez*, 155 Md. App. 1 (2004).

inquiry before the jury. (Ans. To Pet. Ex. 4, pp. 231-241.)

On appeal, Matthews argued the trial court had abused its discretion by restricting cross-examination. The Court of Special Appeals of Maryland rejected the claim, ruling:

> A review of the transcript indicates that there was nothing in the witnesses answers to the questions that established misconduct in hiding exculpatory evidence or improperly extracting a confession. In the *Perez* case, Detective Frankenfield testified that Myers had not confessed to the murder under investigation and that the detective verified that Myers was not in the State at the time of the homicide. Similarly, Detective Frankenfield did not testify to any misconduct in the Keith Longton matter. While appellant makes no point of the testimony concerning possible misstatements, we note that a certain amount of deception is not necessarily unlawful. *Ball v. State*, 347 Md. 156, 178 (1997). Appellant did not proffer any evidence other than that elicited from the witness in response to the questions posed. The circuit court was within its discretion to conclude that conduct that might otherwise be relevant to credibility had not been sufficiently established. We perceive no error.

(Answer to Pet. Ex. 10, p. 14.)

The Confrontation Clause of the Sixth Amendment guarantees the accused the right to cross-examine witnesses. It does not guarantee the right to unfettered, unlimited cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). Trial judges "retain wide latitude" to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, witness safety, repetition, or relevance. *See Delaware,* 475 U.S. at 679.

The trial court's findings are supported by the facts elicited at the hearing. The state court's decision was neither contrary to, or involved an unreasonable application of, clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. There is no cause for federal habeas relief.

3. Cross-examination at Suppression Hearing

Matthews asserts that allowing the prosecutor to cross-examine him at the suppression hearing constituted trial court error. Matthews raised this claim as a violation of state evidentiary rules in his direct appeal to the Court of Special Appeals of Maryland. (*See* Answer to Pet. Exs. 8-10.) He presents his claim on federal habeas review as a violation of his right against self-incrimination and his right to due process under the Fifth and Fourteenth Amendments. Respondents argue that because his current constitutional challenge was not raised in all appropriate state courts, it is procedurally defaulted. The court agrees.

Further, even if this claim were not procedurally defaulted, it would fail on its merits. The Court of Special Appeals upheld the suppression court's decision as follows:

> Appellant moved to suppress his statements made to police officers. At that hearing, appellant testified that Detective Frankenfield induced him to give written statements by promising him that he would not receive a life sentence. On cross-examination, according to appellant, the State's Attorney asked questions about other matters, beyond the scope of direct examination. Specifically, appellant points to questions about what he did on the day of the crime, whether he had stolen items from Mr. Spencer's home, and whether he had asked people to lie on his behalf.
>
> Appellant contends cross-examination went beyond the scope of direct, in violation of Rules 5-104(d) and 5-611(b)(1). Appellant explains that '[s]ince the trial court had the duty to determine credibility, allowing unfettered cross-examination of Appellant was extremely prejudicial."
>
> Rule 5-104(d) provides that an accused, by testifying upon a preliminary matter of admissibility, does not become subject to cross-examination as to other issues in the case. That Rule must be read in conjunction with Rule 5-611(b), which permits cross-examination of the subject matter on direct and "matters affecting the credibility of the witness." Appellant, in his brief, acknowledges that the issue of his credibility was a part of his motion to suppress. Detective Frankenfield testified that he made no promises. The court could and did consider the answers as relevant to appellant's credibility, including appellant's testimony with respect to his prior inconsistent statements to the police.

> There is no suggestion that appellant's privilege against self incrimination was violated. Even assuming the court erred in permitting cross-examination beyond the scope of direct, such error was harmless beyond a reasonable doubt.

(Answer to Pet. Ex. 10, pp. 21-22.)

The decision rendered by Court of Special Appeals was not an unreasonable application of Supreme Court precedent. The issue before the suppression court was whether the confession was admissible or the result of improper inducement. The trial court needed to evaluate whether Matthews and Frankenfield were credible in order to assess voluntariness. The state court decision is entitled to deference under the standard for evaluating § 2254 petitions and will not be disturbed.

## CONCLUSION

For reasons stated, the court determines that no grounds have been presented warranting habeas corpus relief. The petition will be denied by separate order.

<u>October 21, 2009</u>                            <u>        /s/        </u>
Date                                                       Catherine C. Blake
                                                                      United States District Judge